UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

OLIVER DEVAUN O'SULLIVAN,

v.                                    Case No. 2:06-cr-33-FtM-33SPC
                                      2:10-cv-563-FtM-33SPC

UNITED STATES OF AMERICA.

_____

O R D E R

This cause is before the Court on Defendant Oliver Devaun O'Sullivan's timely-filed motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255 (hereinafter "motion" or "motion to vacate"). (Doc. Cv-1; Cr-296).  A review of the record demonstrates that, for the following reasons, the motion to vacate must be **denied.**

**PROCEDURAL BACKGROUND**

On February 22, 2006, a grand jury sitting in the Middle District of Florida returned a Superseding Indictment charging O'Sullivan with Conspiracy To Possess with Intent To Distribute OneThousand Kilograms or more of marijuana from an unknown date, but at least by November 2002, and continuing through and including February 17, 2006 (Count Two); and Possession, and Aiding and Abetting the Possession, with Intent To Distribute One Thousand Kilograms or more of Marijuana from on or about January 19, 2006, to on or about February 17, 2006 (Count Three), in violation of Title 21, U.S.C. §§841(a)(1), 841(b)(1)(A)(vii), and 846. Doc. Cr-3. O'Sullivan was not charged in the original Indictment. Doc. Cr-1.

On April 17, 2006, O'Sullivan proceeded to trial and was found not guilty of Count Two and guilty of a lesser amount of marijuana in Count Three, 100 kilograms or more.

Docs. Cr-76, 130, 131, 132. During his trial, O'Sullivan was represented by Attorney Martin

Roth. Docs. Cr- 30, 131, 137.

On August 3, 2006, the Court sentenced O'Sullivan to seventy months incarceration

to be followed by four years of supervised release. Docs. Cr-112, 117. O'Sullivan filed a

direct appeal. Doc. Cr-106; Appeal No. 06-14670-HH.

On November 14, 2007, the Eleventh Circuit reversed O'Sullivan's conviction and

remanded for further proceedings, stating:

> Having been convicted of possession with intent to distribute 100
> kilograms or more of marijuana, Oliver Devaun O' Sullivan appeals his
> conviction on two grounds.
>
> O'Sullivan contends that the evidence was insufficient to convict him
> because it did not prove beyond a reasonable doubt that he knew the
> 800-pound load put into the truck he was driving was marijuana. While the
> evidence was not overwhelming, it was sufficient to prove all the elements of
> the crime, including O'Sullivan's knowledge that what was loaded into the
> truck and being transported was illegal drugs. *See United States v. Tavlor*,
> 480 F.3d 1025, 1026 (11th Cir. 2007); *United States v. Camargo-Vergara*, 57
> F.3d 993, 997 (11th Cir. 1995); *United States v. Vera*, 701 F.2d 1349,
> 1358-59 (11th Cir. 1983). The government was not required to prove that he
> knew the identity of the particular illegal drug that was involved. *United States
> v. Gomez,* 905 F.2d 1513, 1514 (11th Cir. 1990).
>
> O'Sullivan's second contention is that during closing argument the
> government violated his constitutional right to remain silent by commenting
> on his failure to offer any exculpatory statement or explanation after he was
> arrested. The prosecutor's remarks ("He's not, 'why am I under arrest?
> What's going on? There must be some mistake. You need to call the guy.'
> No, no, evasive.") were comments on O'Sullivan's post-arrest silence. The
> record is not clear whether O'Sullivan had been given *Miranda* warnings at
> the time of the silence the prosecutor commented on. If O'Sullivan had been
> warned, the comments clearly violated *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct.
> 2240 (1976). But even if no *Miranda* warnings had been given, the comments
> were still an unconstitutional comment on the defendant's silence under our
> decision in *United States v. Edwards*, 576 F.2d 1152 (5th Cir. 1978).
>
> The district court gave a curative instruction of sorts, but never
> explicitly instructed the jurors to disregard the prosecutor's comments. In any

event, our decisions indicate that a curative instruction will not undo the prejudice inflicted by a clear comment on a defendant's silence. *See United States v. Hale*, 422 U.S. 171, 172-73, 175 n.3, 95 S. Ct. 2133, 2135, 3126 n.3 (1975): *Edwards*, 576 F.2d at 1154 ("Such comments may constitute plain error, and a judge's cautionary instruction will not suffice to cure the error."); *United States v. Henderson*, 565 F.2d 900, 904-05 (5th Cir. 1978); *United States v. Impson*, 531 F.2d 274, 276, 278 (5th Cir. 1976).

We cannot conclude that the error was harmless. While the evidence was sufficient for a jury to conclude beyond a reasonable doubt that O'Sullivan is guilty, it is not sufficient for us to conclude beyond a reasonable doubt that the constitutional error in commenting on O'Sullivan's post-arrest silence was harmless. *See Chapman v. California*, 386 U.S. 18, 22-24, 87 S. Ct. 824, 827-28 (1967).

*United States v. Oliver Devaun O'Sullivan*, 255 Fed.Appx. 407, 409 (11th Cir. 2007). The mandate issued December 13, 2007.

On December 19, 2007, this Court vacated the judgment (Doc. Cr-117) and reopened the criminal case. Doc. Cr-152. On May 21, 2008, the Court commenced O'Sullivan's second jury trial.  Doc. Cr-212. On May 23, 2008, O'Sullivan was convicted of Possession and Aiding and Abetting the Possession with Intent To Distribute 100 kilograms or more of Marijuana (Count Three). Doc. Cr-230.

On October 28, 2008, the Court sentenced O'Sullivan to seventy months incarceration to be followed by four years of supervised release. Doc. Cr-251. On November 5, 2008, O'Sullivan filed a notice of appeal. Doc. Cr- 253. O'Sullivan's conviction was affirmed on appeal. Doc. Cr-295; *United States v. Oliver Devaun O'Sullivan*, 361 Fed.Appx. 993 (11th Cir. 2010).  The mandate issued March 9, 2010. O'Sullivan did not seek certiorari review in the United States Supreme Court.

## THE PRESENT MOTION TO VACATE

On September 13, 2010, O'Sullivan filed the present motion to vacate, set aside, or

3

correct illegal sentence pursuant to 28 U.S.C. §2255, raising three grounds for relief:

> **Ground One:** O'Sullivan alleges that the United States was precluded by double jeopardy, collateral estoppel, res judicata, preclusion clause, and law of the case doctrine, from trying O'Sullivan on Count Three of the Superseding Indictment as a result of O'Sullivan's acquittal of Count Two during the first trial. (Doc. Cv-1 at 2).

> **Ground Two:**   O'Sullivan alleges that his right to a speedy trial was violated following the reversal of his conviction by the Eleventh Circuit Court of Appeals. (Doc. Cv-1 at  3).

> **Ground Three:** O'Sullivan alleges that trial and appellate counsel were ineffective because they failed to effectively argue, with appropriate case law, that the Government was collaterally estopped from prosecuting O'Sullivan following his acquittal on Count Two. (Doc. Cv-1 at 3).

## DISCUSSION

### Ground One

O'Sullivan claims that the Government was barred from re-litigating Count Three of the Superseding Indictment based on the jury's acquittal of O'Sullivan on Count Two at O'Sullivan's first trial. O'Sullivan asserts:

> For the government to establish the essential element of aiding and abetting charge under 18 U.S.C. § 2 to possess and distribute marijuana as charge (sic) in the initial indictment required knowingly joined (sic) a conspiracy to possess with intent to distribute marijuana . . . ."

(Doc. Cv-1 at 6)

O'Sullivan's contention, that the initial acquittal of O'Sullivan for Count Two --

**Conspiracy To Possess with Intent To Distribute** 1000 kilograms or more of Marijuana--

precluded the Government from proving, at a second trial,  that O'Sullivan **possessed and aided and abetted the possession with intent to distribute** 100 kilograms or more of marijuana, is without merit.  Neither double jeopardy, res judicata, collateral estoppel nor

4

any other legal basis[1] prohibited the Government from seeking O'Sullivan's conviction for the conduct alleged in Count Three of the Superseding Indictment, notwithstanding his prior acquittal of Count Two.

### Double Jeopardy

The double jeopardy clause of the Fifth Amendment protects against a second prosecution for the same offense following an acquittal, as well as a second prosecution for the same offense following conviction. Amendment V, United States Constitution; *United States v. Smith*, 574 F.2d 308, 309 (5th Cir. 1978). However, where two offenses each require proof of an additional fact that the other does not, there is no double jeopardy violation. *United States v. Blockburger*, 284 U.S. 299, 304 (1932).

During the first trial, O'Sullivan was **acquitted** of Count Two of the Superseding Indictment. The **reversal** of the conviction for Count Three, based on a violation of O'Sullivan's right to remain silent, did not foreclose a subsequent prosecution for Count Three. *Burks v. United States*, 437 U.S. 1, 18 (1977)(holding that only an appellate finding of insufficiency of the evidence resulting in reversal of the conviction would bar a subsequent prosecution).

Counts Two (Conspiracy To Possess with Intent To Distribute) and Three (Possession and Aiding and Abetting the Possession with Intent To Distribute Marijuana) are distinguishable offenses with distinct elements such that O'Sullivan was not subjected to jeopardy twice for the same offense.

---

[1] O'Sullivan also alleged that the preclusion clause and law of the case doctrine rendered the conviction unconstitutional.  Because O'Sullivan did not elaborate on these theories in his section 2255 motion, the Court will not address these allegations.

The elements necessary to prove a conspiracy (Count Two) are "(1) an agreement between the [Defendant] and one or more persons, (2) the object of which is to do either an unlawful act or a lawful act by unlawful means." *United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir. 2005) (quoting *United States v. Smith*, 289 F.3d 696 (11th Cir. 2002)).

The elements necessary to prove possession and aiding and abetting the possession with intent to distribute marijuana (Count Three) are "(1) knowing (2) possession [of a controlled substance], and (3) intent to distribute [that substance]." *United States v. Poole*, 878 F.2d 1389, 1391 (11th Cir. 1989). The Court instructed the jury on these same elements: "(1) that the [Defendant] knowingly and willfully possessed marijuana as charged; (2) that the [Defendant] possessed the [marijuana] with the intent to distribute it; and (3) that the weight of the marijuana possessed by the [Defendant] was in excess of 100 kilograms or more as charged." Doc. Cr-229 at 13. The facts necessary to establish an aiding and abetting theory are that: (1) the substantive offense was committed by the [Defendant]; (2) that the [Defendant] contributed to and furthered the commission of the substantive offense; (3) that the [Defendant] intended to aid the commission of the substantive offense. *See United States v. Arias-Izquierdo*, 449 F.3d 1168, 1176 (11th Cir. 2006).

Based on the respective elements of Count Three, the Government was required to prove that O'Sullivan knowingly and willfully possessed the marijuana and that he intended to distribute it. Those additional facts distinguish the substantive offense of possession with intent to distribute from the conspiracy offense. O'Sullivan's contention that the Government was required to prove that O'Sullivan joined a conspiracy to establish the elements of Count Three is erroneous. As a result, there is no double jeopardy violation.

6

**Res Judicata/Collateral Estoppel**

Neither res judicata nor collateral estoppel prohibited the Government from seeking O'Sullivan's conviction for Count Three. The doctrine of res judicata provides that "a question or issue determined by a prior acquittal may not be re-litigated in a criminal proceeding against the same person." *Yawn v. United States*, 244 F.2d 235, 237 (5th Cir. 1957) (quoting *Williams v. United States*, 179 F.2d 644, 650 (5th Cir.), cert. granted, *United States v. Williams*, 340 U.S. 849 (1950), *and judgment aff'd, United States v. Williams*, 341 U.S. 70 (1951) .

Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties." *Ashe v. Swenson,* 397 U.S. 436, 443 (1970).

<u>Res Judicata Did Not Prohibit Re-Litigation of Count Three</u>

While the United States was barred from re-litigating the offense of conspiracy to possess with intent to distribute 1000 kilograms or more of marijuana (Count Two), the bar did not apply to re-litigating O'Sullivan's knowing constructive/actual possession with intent to distribute 100 kilograms or more of marijuana (Count Three).

O'Sullivan's conviction of Count Three during the first trial demonstrates that the jury was satisfied beyond a reasonable doubt that the elements, and the facts to support the elements of Count Three, were proven.

During the second trial, the Court allowed the background of the investigation to be presented to provide the context leading to the allegations in Count Three. This contextual information was not a re-litigation of the allegations in Count Two. The issues raised in Counts Two and Three required proof of different elements and consequently of different

7

facts. The issue resolved by O'Sullivan's acquittal on Count Two, namely that he did not **conspire** with others to possess with intent to distribute 1000 kilograms or more of marijuana, did not resolve the question of whether he knowingly possessed with intent to distribute 100 kilograms or more of marijuana. O'Sullivan does not point to any fact that was resolved in his favor as a result of the acquittal on Count Two that was essential to his conviction for Count Three.

During the second trial, the Government focused on O'Sullivan's conduct beginning with his renting the truck and continuing until his post-arrest conduct/demeanor. That conduct was highlighted by showing that: (1) O'Sullivan obtained a rental truck without an agreement, using an alias; (2) O'Sullivan did not have any significant verbal contact with anyone upon his arrival in Clewiston, Florida;  (3) O'Sullivan did not get out of the truck and wanted the contents placed in the back of the truck under lock; (4) upon his arrest O'Sullivan provided a false name and date of birth and chewed up a piece of paper in his possession; and (4) O'Sullivan had a false identification. From those facts, a reasonable jury could have concluded that O'Sullivan traveled to Clewiston, Florida, and possessed with intent to distribute marijuana on February 17, 2006. None of those facts would have necessarily been determined by the jury at his first trial as a result of his acquittal on Count Two.

### When Does Collateral Estoppel Preclude Subsequent Prosecution?

The Eleventh Circuit has outlined a two part analysis to determine whether collateral estoppel precludes the subsequent prosecution of a defendant for an offense following an acquittal for a separate offense. *United States v. Ohayon*, 483 F.3d 1281, 1286 (11th Cir. 2007). The Court should: (1) "examine the verdict and the record to see what facts, if any,

were necessarily determined in the acquittal at the first trial" and (2) "determine whether the previously determined facts constituted an essential element of the second offense." *Ohayon*, (quoting *United States v. Shenberg*, 89 F.3d 1461, 1479 (11th Cir. 1996)(quoting *United States v. Brown,* 983 F.2d 201, 202 (11th Cir. 1993) (internal quotations omitted).

In *Ohayon*, the Defendant was acquitted of an attempt to possess with intent to distribute ecstasy charge.  However, the jury "hung" on a conspiracy to possess with intent to distribute ecstasy charge. *Ohayon,* 483 F.3d at 1283.  When the Government sought to retry Ohayon on the conspiracy charge, the District Court concluded that the Government was collaterally estopped from retrying Ohayon.

Ohayon's trial theory was that he was an unknowing participant in a drug transaction and that he did not know that the bag(s) he was transporting contained a controlled substance. *Id.* at 1284. The Eleventh Circuit, in affirming the District Court's conclusion that the Government was collaterally estopped from retrying Ohayon on the conspiracy charge, stated that "a rational jury could not have acquitted Ohayon [of the attempt offense] on a ground other than his ignorance of the contents of the bags." *Id.* at 1287.

While the legal analysis of *Ohayon* applies to the instant case, the facts are distinguishable. First, unlike Ohayon, O'Sullivan was not acquitted of the substantive offense charged in the Superseding Indictment. Second, in the instant case, in the first trial, the jury had to have found that O'Sullivan knew, or deliberately ignored, that at least 100 kilograms or more of marijuana were contained within the bags that were loaded into the back of the rental truck and that O'Sullivan intended to distribute the drugs. That is the critical distinction between O'Sullivan's case and *Ohayon.*  O'Sullivan knew what was in the bags while Ohayon did not.

9

While the jury acquitted O'Sullivan of knowingly entering into an agreement with Andrew Wedderburn, Valdoria Riddick, and Travers Hanast to possess with intent to distribute 1000 kilograms or more of marijuana, the basis of the acquittal is not clear from the record. During closing argument at the first trial, Attorney Roth argued that none of the conspirators knew O'Sullivan. Doc. Cr-137 at 431 (Trial Transcript, Day 3). Additionally, Attorney Roth contended that while the conspiracy started in late 2002, no one associated with the conspiracy had any contact with O'Sullivan until February 17, 2006.  Id. at 429. Finally, Attorney Roth argued that there was insufficient evidence to prove that O'Sullivan knew that marijuana was loaded into the rental truck. Id. at 431.

The Government argued that O'Sullivan was contacted "on short notice" to travel from Miami, Florida, to pick up a large amount of marijuana. Id. at 415. Shortly after arriving in Clewiston, Florida, O'Sullivan took possession of approximately 800 pounds of marijuana. Id. at 417. The Government also argued that his actions on February 17, 2006, demonstrated that O'Sullivan knew or deliberately ignored the fact that he was picking up marijuana for further distribution. Id. at 412-413. The Government contended that while O'Sullivan only participated on February 17, 2006, he should be held accountable for the actions of others as charged in the Superseding Indictment. Id. at 444.

The Government argued that, under the Supreme Court's analysis in *Ashe*, the Court should objectively consider "whether a rational jury exposed to the same pleadings, evidence, charge, and other relevant matter could have grounded its verdict upon an issue other than the one O'Sullivan seeks to foreclose from consideration." *Ohayon*, 483 F.3d at 1287-88 (quoting *Ashe, supra*, 397 U.S. at 44).

The issue that O'Sullivan seeks to foreclose from consideration is that O'Sullivan

knowingly joined a conspiracy to possess with intent to distribute marijuana. (Doc. cv-1 at 6)  O'Sullivan asserts because of the aiding and abetting charge under 18 U.S.C. § 2, the "same identical essential elements" were needed to establish the offense charged in Count Three that resulted in his acquittal on Count Two. Id. O'Sullivan further alleges that "it was clear the jury found reasonable doubt that O'Sullivan knew that he was acquiring drugs or made any agreement as conspiracy required." Id. at 7.

<u>The Jury Verdict</u>

The jury in the first trial clearly found beyond a reasonable doubt that O'Sullivan knew that he possessed marijuana and that he intended to distribute it. Knowing possession of the marijuana was an element of Count Three. Whether O'Sullivan entered into an agreement with Andrew Wedderburn, Valdonia Riddick and Travers Hanast to possess with intent to distribute the marijuana was not an element of Count Three. Objectively, a jury could have rationally found that O'Sullivan possessed the marijuana with the intent to distribute it without considering whether O'Sullivan entered into an agreement with Wedderburn, Riddick or Hanast to possess the marijuana with intent to distribute it.

As Attorney Roth pointed out during the first trial, there was no evidence that Wedderburn, Riddick or Hanast knew O'Sullivan. Doc. Cr-137 at 431 (Trial Transcript, Day 3).  Additionally, as Roth pointed out, a third-party contacted O'Sullivan and O'Sullivan then contacted Riddick or Royes to make the pickup. Id. at 429. Consequently, the alleged agreement with Wedderburn, Riddick and Hanast to possess the marijuana with intent to distribute it would not be an essential element of a jury's concluding that O'Sullivan knowingly possessed the marijuana with intent to distribute it. Accordingly, the Government was not collaterally estopped from seeking to re-litigate Count Three of the Superseding

11

Indictment following O'Sullivan's acquittal of Count Two.

Ground One does not warrant relief.

## Ground Two

O'Sullivan alleges that his right to a speedy trial was violated following the reversal of his conviction by the Eleventh Circuit Court of Appeals.

### Applicable Law

Following an appeal, a trial "shall commence within seventy days from the date the action occasioning the retrial becomes final." 18 U.S.C. §3161(e). Additionally, the trial of a person detained solely because he is awaiting trial "shall commence not later than ninety days following the beginning of such continuous detention . . . ." 18 U.S.C. §3164(a)(1)(b). However, both speedy trial limitations are subject to exclusions enumerated under Title 18, U.S.C. §3161(h)(1). Such exclusions include: "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition", §3161(h)(1)(D) and "delay resulting from transportation of any defendant from another district . . ." not in excess of ten days. §3161(h)(1)(F).

A four-part analysis is necessary when a defendant alleges a speedy trial violation. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). That analysis requires the Court to determine: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy trial right; and (4) the prejudice to the defendant. *Id.* However, the defendant must first allege that "the interval between accusation and trial has crossed the threshold dividing ordinary from prejudicial delay . . . ." *Doggett v. United States*, 505 U.S. 647, 651-52 (1992).

### O'Sullivan's Speedy Trial Rights Were Not Violated

O'Sullivan's seventy-day period began to run when the District Court received the mandate from the Eleventh Circuit on December 13, 2007. *United States v. Lasteed*, 832 F.2d 1240,1243 (11th Cir. 1987). However, the District Court could extend the time for trial up to one hundred and eighty days "if unavailability of witnesses, or other factors resulting from the passage of time [made] trial within seventy days impractical." 18 U.S.C. §3161(e).

At the first status conference following the filing of the mandate, Attorney Martin DerOvanesian,[2] expressed concern about his ability to represent O'Sullivan due to a possible conflict. Doc. Cr-263 at 7. It was not until a month later that Attorney DerOvanesian entered his appearance. Also, during the first status conference,  Attorney DerOvanesian requested a continuance until March based upon his belief that he would not "have access to" O'Sullivan before February 2008. Id. at 4. Attorney DerOvanesian subsequently requested a continuance until April.  The Government did not oppose the continuance.

At the second status conference on March 13, 2008, Attorney DerOvanesian requested a continuance until May. The Government did not opposed the continuance. See Attachment B to Doc. 8 at 12, (Transcript of March 13, 2008 Status Conference). At the status conference, Attorney DerOvanesian advised the Court that he had requested additional discovery and would also be filing motions in limine. Id. at 3, 8. On March 25, 2008, Attorney DerOvanesian filed a motion to perpetuate testimony based on the anticipated unavailability of witness Terrence Royes. Doc. Cr-171. On April 2, 2008, the

---

[2] Martin DerOvanesian was an Assistant Federal Public Defender and was not affiliated with prior trial counsel, Martin Roth. Attorney Martin DerOvanesian entered his notice of appearance on February 15, 2008. Doc. Cr-162.

Court granted the motion. Doc. Cr-174. On April 9, 2010, DerOvanesian filed a notice that Terrence Royes' deposition was scheduled for April 10, 2008. Doc. Cr-176. At the April 22, 2008, status conference, DerOvanesian advised that Terrence Royes had invoked his right to remain silent. Doc. Cr-286 at 4.

In summary, the District Court granted continuances to allow Attorney DerOvanesian to communicate with O'Sulllivan and to facilitate his obtaining testimony from a witness who would be unavailable for trial. Also, because O'Sullivan was detained following a detention hearing, O'Sullivan did not arrive at a local jail facility until early February 2008. Since Attorney DerOvanesian could not have been ready for trial without consulting with his client, the District Court appropriately continued the trial and the time frame for speedy trial. The result of these time extensions made trial impractical within seventy days of the mandate.

Additionally, exclusions of time impacted the 70-day speedy trial requirement in O'Sullivan's case. For example, the ten day time from the Court's order of transportation on January 13, 2008 to January 23, 2008 must be excluded. The time from February 14, 2008 to March 3, 2008 must be excluded because O'Sullivan had a pending motion for bond. The time from March 25, 2008 to April 2, 2008 must be excluded because counsel had a pending motion to perpetuate testimony. Finally, the time from May 1, 2008 to May 21, 2008 must be excluded because of the pending defense motions in limine.

Given the need for counsel to familiarize himself with a new case and a new client and to perpetuate the testimony of a witness who would be unavailable for trial, the District Court did not exceed the one-hundred-and-eighty day extension available to the court, and there was no speedy trial violation.

Furthermore, the delay in the this case was the result of Attorney DerOvanesian

14

preparing for O'Sullivan's trial, and the delay was not prejudicial to O'Sullivan.

## O'Sullivan Does Not Allege Prejudicial Delay

O'Sullivan does not allege any delay which was out of the ordinary and presumptively prejudicial. Rather, O'Sullivan claims that he does not have to show actual prejudice and that he filed a motion for speedy trial violation based upon 70 days "passing from the issuance of the mandate." O'Sullivan's Motion at 7-8. The Court dismissed O'Sullivan's speedy trial motion and Attorney DerOvanesian did not adopt the motion.

O'Sullivan fails to state specifically what time delay was presumptively prejudicial to trigger the *Barker* analysis. In the absence of that presumptively prejudicial delay, this Court need not go further in the *Barker* analysis. *United States v. Clark*, 83 F.3d 1350, 1352 (11th Cir. 1996). As a result, O'Sullivan's speedy trial violation claim is without merit.

Ground Two does not warrant relief.

## Ground Three

O'Sullivan claims that trial and appellate counsel were ineffective because they failed to argue that the Government was collaterally estopped from prosecuting O'Sullivan following his acquittal on Count Two. (O'Sullivan's Motion at 9, 14). O'Sullivan asserts that had either his trial or appellate counsel raised the collateral estoppel claim, the outcome would have been different -- that his case would have been dismissed. Id. at 9. In support of the claim, O'Sullivan cites to the trial transcript wherein the Court briefly discussed collateral estoppel and asked counsel for the Government and O'Sullivan to consider the issue. Id.

## Standard for Ineffective Assistance of Counsel

The Sixth Amendment right to counsel is the right to effective assistance of counsel.

15

*McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). The burden is on the defendant to demonstrate that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993). For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance must be highly deferential, and courts "must avoid second-guessing counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.' " *Id.* (quoting *Strickland*, 466 U.S. at 689). The defendant's burden in this regard, though not insurmountable, is a heavy one. *See Chandler*, 218 F.3d at 1314. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different.

16

*United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Rolling v. Crosby*, 438 F.3d 1296, 1300 (11th Cir. 2006). If the defendant fails to show that he was prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *Strickland,* 466 U.S. at 697; *Tafero v. Wainwright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

<u>O'Sullivan's Claims Have no Merit</u>

The Court's discussion of collateral estoppel during O'Sulllivan's second trial resulted from a motion in limine filed by DerOvanesian seeking to exclude the out-of-court statement of Valdonia Riddick. Doc. Cr-266 at 245. The admission of that testimony was upheld by the Eleventh Circuit Court of Appeals. *See United States v. Oliver O'Sullivan*, 361 Fed.Appx. 993, 997-998 (11th Cir. 2010). Additionally, the collateral estoppel claim is meritless and therefore neither trial counsel or appellate counsel were ineffective for failing to raise that claim.

Given that O'Sullivan was originally convicted of possession of marijuana with intent to distribute it (Count Three), and that the facts necessarily essential to prove that charge differed from those necessary to prove conspiracy to possess with intent to distribute marijuana (Count Two), counsel was not ineffective for failing to raise a collateral estoppel claim. O'Sullivan's ineffective assistance of counsel claims has no merit.

Ground Three does not warrant relief.

**PROCEDURAL DEFAULT**

O'Sullivan procedurally defaulted the three grounds that he raises in this motion to vacate because the claims previously were available and were not raised in a prior

proceeding . *See Bousley v. United States*, 523 U.S. 614, 622-24 (1998); *United States v. Frady*, 456 U.S. 152, 166 (1982); *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001). When a defendant raises a constitutional claim on collateral review that he failed to raise in the trial proceedings or on direct appeal, he bears the burden of establishing cause and actual prejudice resulting from the error or actual innocence to excuse the default. *McCoy*, 266 F.3d at 1258-59.

To show cause for not raising a claim in an earlier proceeding, a petitioner must show "some external impediment preventing counsel from constructing or raising the claim." *See High v. Head*, 209 F.3d 1257, 1262-63 (11th Cir. 2000) (quoting *McCleskey v. Zant,* 499 U.S. 467, 497 (1991)). To establish prejudice, O'Sullivan must prove that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *See Wright v. Hopper*, 169 F.3d 695, 706 (11th Cir. 1999) (internal quotations omitted). This is a heavier burden than the burden of establishing plain error on appeal. *See Frady*, 456 U.S. at 164. The futility of raising a claim does not constitute sufficient cause to excuse the default. *Bousley*, 523 U.S. at 623; *Jones v. United States*, 153 F.3d 1305, 1307-08 (11th Cir. 1998).

A petitioner can establish cause in some circumstances by showing that a procedural default was caused by constitutionally ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). *See Fortenberry v. Haley*, 297 F.3d 1213, 1222 (11th Cir. 2003). However, O'Sullivan must allege and prove deficient performance that worked to his actual and substantial disadvantage. *See Reece v. United States*, 119 F.3d 1462, 1465-68 (11th Cir. 1997). As discussed above, O'Sullivan has not met this burden.

18

O'Sullivan's counsel was not ineffective for failing to raise a collateral estoppel claim because that claim lacked merit. Counsel cannot be deemed to have performed deficiently by failing to address an issue that reasonably would have been considered to be without merit. *See Davis v. Singletary*, 119 F.3d 1471, 1476 (11th Cir. 1997); *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994); *Pitts v. Cook*, 923 F.2d 1568, 1572-74 (11th Cir. 1991); *Thompson v. Wainwright*, 787 F.2d 1447, 1459 n. 8 (11th Cir. 1986). Likewise, counsel was not ineffective for failing to raise a speedy trial violation claim, as O'Sullivan did not allege prejudice, and the delay after the mandate fully complied with applicable law.

O'Sullivan has not demonstrated that his claims have merit and that counsel was ineffective for failing to raise the claims. O'Sullivan has not shown cause and prejudice to overcome the procedural bar.

Accordingly, the Court orders:

That O'Sullivan's 28 U.S.C. § 2255 motion to vacate (Doc. Cv-1; Cr-296) is denied. The Clerk is directed to enter judgment against O'Sullivan and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2).

19

To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on January 21, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

AUSA: David L. Haas
Oliver Devaun O'Sullivan

20